## MURRAY v. ORR & LOCKETT HARDWARE CO.

(Circuit Court of Appeals, Seventh Circuit. April 11, 1905.)

### No. 1,110.

PATENTS—INFRINGEMENT—STORE SERVICE LADDERS.

The Murray patent, No. 442,531, for a store service ladder, in which the weight of the ladder and the person thereon is supported by travelers on the base shelf or floor, and having hooked bearings near the upper end, which engage with a rod, to prevent tilting or displacement, was not anticipated in the prior art, and discloses patentable invention. Also *held* infringed.

Appeal from the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

The bill in the court below was to restrain infringement of letters patent No. 442,531, issued December 9th, 1890, to Murray, for store service ladders. There is no substantial question that defendant's device infringes this patent, for it is practically the same as appellants. The bill was dismissed on the ground that the patent itself was invalid.

The Murray patent, with its drawings, is as follows:

"This invention," says the inventor, "relates to ladders for use in stores, libraries, &c., where it is desirable to reach articles placed too high to be reached from the floor; and the object is to provide a step service combining neatness and cheapness in construction and having in view the greatest ease and safety, not only in ascending and descending with a load of objects, but also of propelling ladder and operator from one part to more or less distant parts of the room. These objects are attained to a high degree in the construction, which I claim to be novel, of reversing the customary order of having the travelers and bearings at the top and the guide-bearings at or near the bottom of the ladder, whereby the travelers are placed beneath and near to the weight of the operator, and in a large degree the guide-bearings are relieved from the weight of the operator.

"The invention further consists in providing a brake for the travelers, thus making a secure immovable base for the ladder when desired.

"In the accompanying drawings. forming a part of this specification, Figure 1 is a front elevation of a device embodying my invention. Fig. 2 is a side elevation of the same, the base and pole or guide-rod being in section. Fig. 3 is a fragmentary side elevation, partly in section, showing the construction of the brake. Fig. 4 is a fragmentary front elevation showing the mounting of the travelers and the arrangement of the brake. Fig. 5 is a fragmentary side elevation showing a modified form of traveler. Fig. 6 shows another modification of the same and its track; Fig. 7, a side elevation; and Fig. 8 is a fragmentary side elevation, showing the traveler mounted at the lower end of the ladder, so as to run on the floor.

"Similar letters of reference indicate corresponding parts.

"Referring to the drawings. A represents a common style of shelving as used in stores, libraries, &c., and B the projecting base-shelf thereof. On suitable posts or columns A' is mounted by brackets E E a horizontal pole or guide-rod D, which may be of wood or metal, (preferably tubular,) as desired.

"C is a ladder provided with hooks F F, engaging loosely the guide-rod. It will be seen that the inner ends of these hooks pass a little below the center of the guide-rod, so that there is no possibility of their being tilted out of engagement with said guide-rod by the operator stepping on the ladder below the lower bearings. To allow for the free passage of the hooks along the guide-rod, that part of the bracket engaging with the guide-rod is made to encircle it somewhat less than half the circumference, as shown in Fig. 2.

"To the lower part of the ladder are secured bearings G G, and in these are mounted travelers H H. These bearings, as will be seen, extend laterally from the ladder, the extent thereof being as much as may be desirable to give stability to the ladder against tilting sidewise.

"In the drawings various forms of travelers are illustrated. Thus in Fig. 3 a grooved traveler is shown running on a convex track B', secured to the base-shelf B. In Fig. 6 the reverse of this is shown, the groove being in the track. The preferred form for use in connection with the base-shelf is illustrated in Fig. 5, being a simple flanged wheel with a flat tread to run on the top of the shelf or on a flat track. (Not shown.) The purpose of the flange is to prevent the ladder from crowding inwardly against the edge of the shelf, as it has a tendency to do. To prevent marring and undue wear of the top of the shelf in case the track with a hard durable surface is dispensed with, and also to deaden the sound which might arise from the movement of the ladder back and forth, the traveler is preferably tired with some non-sonorous and slightly yielding material, as rubber, leather, compressed paper, or the like.

"To hold the ladder firmly in position when occasion requires, it is desirable to provide the travelers, or one of them, with a brake. This is illustrated in Figs. 3 and 4. This consists in a spring I, secured to the bearing or box G and provided with a suitable shoe I', conforming to the tread of the wheel. To the free extremity of this spring is connected a rod J, pivotally connecting at the other end with a pivoted hand-lever K, suitably mounted at the side of the ladder. The natural tendency of the spring is to press the brake-shoe into engagement with the wheel, and thus pre-

vent its·turning. By throwing the hand-lever up past the center, as shown. in Fig. 3, the brake is disengaged and automatically locked in that position.

"In cases where there is no base-shelf or where for any reason it is desirable not to have the travelers operate on the base-shelf the ladder may be carried nearly to the floor and provided with travelers at the bottom to run on the floor, as shown in Fig. 8. The traveler in this case may be of any of the forms described above, operating with or without a grooved or flanged track.

"It will be seen that practically the entire weight of the ladder and its occupant is supported by the base-shelf or the floor, so that the guide-rod may be of comparatively light material, and the heavy iron track and brackets necessary in the case of a ladder suspended from the upper end are dispensed with. This construction also disposes the weight on the travelers at a point below the hand of the operator, so that in moving the ladder sidewise the hand is placed between the lower and upper bearings of the ladder and at a point where the resistance of such bearings is prac-tically equal. The practical effect of this is to render the movement of the ladder very smooth and easy with no tendency to throw the ladder out of line and displace either traveler.

"This invention, from the nature of the case, is applicable more particularly to ladders which are moved laterally in front of shelves and the like, and not to such ladders as are suspended from above and have travelers at the foot running on the floor, and adapted to carry the ladder forward and backward, considered with respect to the operator or the inclination of the ladder. In all such ladders the friction is necessarily so great that anti-friction rollers must be used above as well as below; but in this invention I dispense with rollers above, saving the expense of their manufacture and avoiding the annoyance due to the dripping of oil from their bearings. In the ordinary operation of the ladder the hooks at the upper end form no necessary part of the ladder's support, since practically the whole weight is carried on the travelers at the bottom, the small proportion due to the inclination of the ladder being carried by the outer face of the guide-rod. Indeed, this inclination of the ladder as ordinarily used in stores, libraries, &c., is so inconsiderable that the weight, with the operator on the ladder, is practically balanced on the travelers, and the slightest possible strain is imposed upon the guide-rod or friction upon the upper bearings. I am therefore able to dispense with the costly rollers and the heavy fixtures commonly used for the upper bearings and use a simple light pole or rod and a hooked bearing on the ladder, which requires no oiling or ɔther attention and is free from the objections before referred to. The hook itself need not even touch the guide-rod ordinarily; but it nevertheless serves the useful purpose of preventing the ladder from tilting outward or sidewise at the top.

"The device, as will be seen and understood, is neat and attractive in appearance and of such a nature as to be quickly and cheaply applied to any place where it may be required.

"Having thus described my invention, what I claim as new, and desire to secure by Letters Patent is—

"1. The combination, with a horizontal guide adapted to form a rest for the upper end of the ladder, of a ladder having hooked bearings near the upper end engaging said guide loosely to prevent tilting or displacement of the ladder, and travelers at or near the foot of the ladder, adapted to support the same and carry it laterally on the base-shelf or floor, substantially as described.

"2. The combination, with a store-service ladder having travelers at or near the lower end, adapted to support the ladder on the base-shelf or floor, of a brake, substantially as described, adapted to engage with one of said travelers, and a hand-lever adapted to disengage the same.

"3. The combination, with a store-service ladder, substantially as described, of a traveler H, spring-brake I, hand-lever K, and connecting-rod J.

"4. The combination, with a suitable track therefor at or near the bottom of the ladder, of a ladder having travelers mounted on bearings extending laterally from the ladder, whereby the ladder is adapted to move laterally

on a base-shelf or the floor and is the better protected against tipping sidewise."

The two patents relied upon, chiefly, as anticipations, are the Smith patent, No. 423,902, and the Shickle patent, No. 312,909. The Smith patent with its drawings, are as follows:

"My invention," says the inventor, "relates to an improvement of stepladders for stores: and it consists in the combination and arrangement of the parts, hereinafter described, and shown in the accompanying drawings.

"To enable others skilled in the art with which my invention is most nearly connected to make and use it, I will proceed to describe its construction and operation.

"In the accompanying drawings, which form part of my specification, Figure 1 is a view of the ladder attached to the shelves. Fig. 2 is a view of the ladder, showing its connection with ropes for propelling it along the shelves. Fig. 3 is a modified form of a metal groove attached to the floor for a pulley-wheel connected to the lower ends of the legs of the ladder to move in. Fig. 4 is a modified form of a roller to be attached to the lower end of the legs of the ladder.

"In the drawings, A represents the ordinary shelving used in stores. Along the edge of the platform of the shelves is secured an inclined metal strip B, held in position by means of bolts.

"E is the ladder, the legs of which have a slot F, in which an adjustable piece D moves up and down, said adjustable piece being held in the desired position by means of a set-screw G. To this adjustable piece is attached rollers C C, which roll along the upper and lower face of the inclined metal piece B. In the lower end of the legs of the ladder is secured flanged wheels K, working in the groove of the metal piece L, secured to the floor. To each end of the inclined metal piece B is secured pulley-wheels I I, over which runs a rope or cord H, the ends of which are attached to the legs of the ladder by means of hooks J.

"The operation is as follows: The ladder E being placed in position against the shelves A, the adjustable piece D is set to the required height of the platform of the shelves and held in position in the slot F by means of the set-screw G, the rollers C C resting on the upper and lower faces of the inclined metal piece B, the flanged wheel K resting in the groove of the metal piece L. The salesman can, by taking hold of the rope or cord H, transfer himself along the shelving without getting down off the ladder.

"If desired, the flanged wheel K can be dispensed with and an ordinary roller—such as shown in Fig. 4—be used in its place. In that case the

metal groove-piece shown in Fig. 3 can be attached to the floor for the roller to move in.

"What I claim is—

"In a step-ladder, the inclined metal piece B, rollers C C, adjustable piece D, slots G, flanged wheel K, cord H, pulleys I I, and metallic groove L, combined, arranged, and operating with relation to each other substantially as herein described and shown, and for the purpose set forth."

The Shickle patent with its drawings, are as follows:

"Figure 1 is a front elevation of the improved fire-escape in position, the building-front being shown in broken lines; Fig. 2, a front elevation, upon an enlarged scale, of the escape; Fig. 3, a side elevation of the escape, the building-front being shown in vertical section; and Fig. 4, a horizontal section, upon an enlarged scale, upon the line 4 4 of Fig. 3.

"The same letters of reference denote the same parts.

"The present invention is an improvement in that class of fire-escapes wherein a ladder is permanently attached to the building.

"The improvement relates to the means by which the ladder is attached to and adjusted upon the building.

"A represents the ladder.

"B represents a toothed rail or rack, attached by means of brackets, such as b, to the building C at or toward its top. The rail may extend along the front c, as well as along the sides of the building.

"D represents another toothed rail or rack, which is attached to and extends along the front or front and sides of the building lower down upon the building than the first-named rail.

"The ladder is hung upon the two rails B D as follows:

"E represents a hanger attached to the ladder and provided with a pinion, F. The pinion has flaring flanges f f, and it is attached to a shaft, $f^1$, which passes through the hanger and in front of the hanger is provided with a bevel gear, G.

"Opposite the lower rack, D, a shaft, H, is journaled in the ladder, the shaft extending at right angles to the ladder, and provided in front of the ladder with the gear I and the bevel gear J, and in rear of the ladder with the pinion K. The pinion engages with the lower rack D.

"L represents an upright shaft journaled in the ladder at 1 1, and provided with the bevel-pinions $l^1$ $l^2$, which engage, respectively, with the bevel-gears G J.

"M represents a crank-shaft journaled in the ladder at m and provided with the pinion $m^1$, which engages with the gear I.

"The ladder is also furnished with the grooved pulleys N N, which are adapted to roll upon a rail, O, which is attached to the building in front of the lower rack, D.

"On rotating the crank M motion is imparted to the upright shaft L, and through it to the pinions F K, and the ladder in consequence is moved laterally along the building front or sides and to the right or left, according to the direction in which the crank-shaft M is rotated.

"The sides a a of the ladder are perferably made tubular, to furnish means for conducting streams of water upward onto the building. The upper end of the ladder is extended at $A^1$ $A^1$, Figs. 1, 3, to enable the water to be thrown onto the roof of the building.

"I claim—

"1. The combination of the rails B and D, the ladder A, the hanger E, the shaft H, and the wheels F K, adapted to be applied to a building, substantially as described.

"2. The combination, as described, of the racks B D, the ladder A, the hanger E, the shaft H, the wheels F K, the gears G I J $m^1$, the shafts L M, the rail O, and pulleys N N, adapted to be applied to a building, substantially as described."

Other patents cited are as follows:

No. 200,844, March 5, 1878, J. Richardson.
No. 259,622, June 13, 1882, A. Williams.
No. 274,855, March 27, 1883, J. F. Treftz.
No. 295,278, March 18, 1884, H. Poole.
No. 312,908, February 24, 1885, F. Shickle.
No. 315,939, April 14, 1885, T. A. Harvey.
No. 345,478, July 13, 1886, W. J. Blundell.
No. 356,375, January 18, 1887, E. A. Perkins.
No. 375,701, December 27, 1887, J. A. Fallgatter.
No. 383,449, May 29, 1888, J. Eiden.
No. 426,983, April 29, 1890, L. Coburn.
No. 443,299, December 23, 1890, C. L. Smith.
No. 499,028, June 6, 1893, E. M. Murray.
Certificate of clerk.
Citation.

The bill was dismissed chiefly on the Smith patent as an anticipation. Further facts are stated in the opinion.

Josiah McRoberts, for appellant.
John G. Elliott, for appellee.

Before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

GROSSCUP, Circuit Judge. The Smith patent is a short store ladder, fastened at about its center to the top of the base shelf, by means of a track and two rollers—the track being a part of the ladder—but adjusted as to height by means of a slot and screw arrangement. The base of the ladder is a roller or wheel, resting in the groove of a metal piece on the floor. In operation, the ladder runs backwards and forwards on two fixed tracks, from neither of which is the weight of the man at any time wholly withdrawn. Nor has the weight of the man anything to do, except incidentally, with the lateral propulsion of the ladder.

The Shickle patent is a fire escape. Shorn of the machinery for its propulsion laterally, it is said to rest wholly upon the rollers at its base. But it is evident that the machinery could not be operated without putting a substantial weight upon the roller at the top. Besides, like the Smith patent, the ladder is permanently and closely adjusted at two points, thus failing to utilize any advantage in operation that may come from the balancing of the man's body, so as to change the center of gravity.

The Murray patent is a store ladder whose weight is wholly upon the rollers upon the floor or base shelf—the upper fastening being a loose one, by means of hooks intended solely to keep the ladder from tipping over. It differs from the Shickle ladder in that it is not perpendicular, thus giving room for base shelves, and also an inclination that makes climbing easier; and it differs from both the Smith and the Shickle patents in that, practically, it runs on only one track, utilizing the balancing of the man's body to propel it laterally without friction. This new thought in the art of ladder making—the utilizing of the man's weight to adjust the center of gravity—clearly was in the mind of the inventor, (letters patent line 40 et seq.) and finds embodiment in the mechanical means adapted to that end.

It is not enough to say that the upper hook of the Murray patent is identical with the upper fastening of the Smith and Shickle patents. They have some offices in common; but the hook has an office that the fixed rollers have not, the yielding itself, without destroying its usefulness, to the balancing motion of the man's body.

It is not enough to say that the Smith ladder, sawed off at or near the upper rollers, would be the Murray patent. Smith did not, in fact, saw off his ladder. But had he done so, preserving the mechanism of the fastening at the upper end, his ladder would have been unyielding to the balancing of the man's body, and therefore would not have accomplished both the mechanical and the practical purpose that Murray achieved. We find from all this, that in the Murray patent there is conception of a new idea, together with its embodiment in appropriate mechanical form, substantially unanticipated, useful, and possessing the quality of invention. The decree of the Circuit Court will therefore be reversed, with the direction to the Circuit Court to enter a decree in complainant's favor for an injunction and an accounting.